# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| U.S. CONVEYOR TECHNOLOGIES MANUFACTURING, INC., <br><br> Plaintiff, <br><br> v. <br><br> NEW ENGLAND QUALITY SERVICE, INC., EARTH WASTE & METAL, INC., & KEVIN C. ELNICKI, <br><br> Defendants. | Case No. 1:18-cv-1264 |

## OPINION & ORDER

Before the Court is Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 11), which seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. For the following reasons, the motion is DENIED.

### BACKGROUND

Plaintiff, U.S. Conveyer Technologies Manufacturing, Inc., is an Illinois corporation with its principal place of business in Mackinaw, Illinois. (Doc. 3 at ¶ 1). Defendants New England Quality Service, Inc. (NEQS) and Earth Waste & Metal, Inc. (EWM) are Vermont corporations with their principal places of business in Vermont. (Doc. 3 at ¶ 2). Defendant Kevin C. Elnicki is a citizen and resident of the State of Florida and is president of both Defendants NEQS and EWM. (Doc. 12-1 at ¶¶ 2-7).

1

In April 2014, Defendant Elnicki met Bill Tigner, President of U.S. Shredder and Casting Group, Inc. (US Shredder),[1] at a convention in Las Vegas, Nevada. (Doc. 12-1 at ¶ 9). At the convention, Tigner "expressed that US Shredder could build [Defendant] EWM a ferrous and non-ferrous scrap metal recycling system." (Doc. 12-1 at ¶ 10). Following this meeting, US Shredder connected Defendant Elnicki with Conner Brothers Machine Co., Inc. (CBM), a company operating in North Carolina, for the purpose of repairing and/or rebuilding a used shredder owned by one of the defendants in this action.[2] (Doc. 13-1 at ¶ 9). US Shredder and Defendant Elnicki continued discussions, during which US Shredder agreed to sell Defendant EWM a scrap metal processing system (the System), a component to be attached to the shredder being repaired and/or rebuilt by CBM. ((Doc. 13-1 at ¶ 16). In the ensuing months, Defendant Elnicki and Tigner engaged in e-mail and/or phone conversations and four in-person meetings, two in Vermont and one in each Florida and New York. (Doc. 12-1 at ¶ 12).

---

[1] At all relevant times, US Shredder and Plaintiff were affiliates in that Kenton L. Graves, president of Plaintiff, owned 49% of the issued stock in US Shredder and 100% of the issued stock in Plaintiff; essentially, Plaintiff would design, fabricate, and assemble equipment sold and distributed by US Shredder. (Doc. 13-1 at ¶¶ 2-12). Both US Shredder and Plaintiff were based in the same facility located in Mackinaw, Illinois, which was Plaintiff's sole facility. (Doc. 13-1 at ¶¶ 3, 6, 10).

[2] In his first affidavit, Defendant Elnicki insinuated the shredder was owned by Defendant EWM (Doc. 12-1); however, Plaintiff has pointed the Court's attention to litigation in North Carolina, wherein Defendant NEQS, doing business as Earth Waste & Metal/American Iron & Metal of TN, asserted ownership of the shredder (Doc. 17-1). It is thus unclear which entity owns the shredder; what is clear, however, is that Defendant Elnicki has—under oath—both alleged Defendant NEQS owned the shredder and insinuated that Defendant EWM owned, or at the very least, had dominion and control over the shredder, which suggests ownership. Defendants are reminded that false or misleading statements to the Court can result in dire consequences to attorneys and parties alike.

At some point, a purchase order proposal was sent to Defendant Elnicki. The purchase order proposal appeared on US Shredder letterhead and listed an Alabama address along with the Mackinaw, Illinois, address. (Doc. 12-1 at Ex. B). On December 8, 2014, US Shredder, through its employee Christopher Melenick, sent a final purchase order confirmation to Defendant EWM (Doc. 13-2); following further discussions with Defendant EWM, a revised final purchase order confirmation was sent to Defendant EWM on December 12, 2014 (Doc. 13-1 at ¶ 18, Ex. B). Both final purchase order confirmations appeared on US Shredder letterhead and listed solely the Mackinaw, Illinois, address. (Doc. 12-1 at Ex. C; Doc 13-1 at Exs. A, B, C). Defendant Elnicki signed the final purchase order confirmation and returned it to Tigner or "someone else employed by US Shredder." (Doc 12-1 at ¶ 17, Ex. C; Doc 13-1 at ¶ 20, Ex. C).

Tigner thereafter informed Defendant Elnicki that Plaintiff would handle billing directly because it was Plaintiff's responsibility to design, fabricate, assemble, and install the System. (Doc. 13-1 at ¶ 22). Plaintiff then sent an invoice to Defendant EWM for a 20% down payment, and Defendant NEQS remitted a partial payment of the invoice on behalf of Defendant EWM to Plaintiff at its Mackinaw, Illinois, address. (Doc. 13-1 at Exs. D, E). Plaintiff thereafter commenced design and fabrication, but Defendants failed to make any additional payments required by the agreement. (Doc. 3 at ¶¶ 16). Plaintiff therefore ceased work and brought this suit for breach of contract. (Doc. 3).

3

## LEGAL STANDARD

Defendants move to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). (Docs. 11, 12). The plaintiff bears the burden of proving personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). "Once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). Factual disputes are resolved in favor of the plaintiff, in whose favor all reasonable inferences are likewise to be drawn. *Id.* at 783 n.14; *N. Grain Mktg., LLC*, 743 F.3d at 491.

At the pre-answer stage, the matter of personal jurisdiction may be resolved on the documentary submissions of the parties without an evidentiary hearing and "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *N. Grain Mktg.*, 743 F.3d at 491 (internal quotation marks omitted). However, where the defendant succeeds in establishing a dispute of material fact as to the plaintiff's *prima facie* case of personal jurisdiction, the plaintiff must prove the existence of personal jurisdiction by a preponderance of the evidence at either an evidentiary hearing or trial. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (3d ed. 1998).

## DISCUSSION

The Court must decide whether personal jurisdiction exists as to the three defendants named in this cause of action. At the outset, Plaintiff concedes the Court

lacks personal jurisdiction over Defendant Elnicki by operation of the fiduciary shield doctrine. (Doc. 13 at 10). Defendants, however, make no argument with respect to the fiduciary shield doctrine or to Defendant Elnicki specifically. (*See* Doc. 12). The Court will therefore construe Plaintiff's concession as a voluntarily dismissal of the claim against Defendant Elnicki pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i)[3] and will terminate him from these proceedings without prejudice.

This leaves Defendants NEQS and EWM. The Court ordered Defendants to submit a supplemental memoranda "explaining (1) the corporate relationship(s) among Defendants, (2) Defendant NEQS's role in the transaction at issue and why Defendant NEQS played an active role in obtaining financing for the transaction at issue, and (3) any additional argument why personal jurisdiction is lacking specifically as to Defendant NEQS[;]" Plaintiff was given the opportunity to respond. (Doc. 14 at 2). In their supplemental memorandum, Defendants insist they are entirely separate corporations and Defendant NEQS's sole role in this transaction was to serve as guarantor for Defendant EWM's loan to finance the purchase of the System and to issue the partial payment of the initial invoice. (Doc. 16). Plaintiff, on the other hand, alleges Defendant NEQS is the true party of interest as opposed to Defendant EWM. (Doc. 17). The Court will address each defendant in turn.

---

[3] Pursuant to Rule 41(a)(1)(A)(i), a plaintiff may voluntarily dismiss a claim without stipulation or court order before the defendant files either an answer or a motion for summary judgment. To date, neither has been filed in this case.

## I. Defendant EWM Has Sufficient Minimum Contacts with the State of Illinois to Exercise Personal Jurisdiction

"A federal court sitting in diversity looks to the personal jurisdiction law of the state in which the court sits to determine if it has personal jurisdiction over a defendant." *Travel Servs., Inc. v. Vacation Tours USA, Inc.*, 221 F. Supp. 3d 1024, 1030 (C.D. Ill. 2016) (citing *Hyatt Int'l*, 302 F.3d at 713). The Illinois long-arm statute contains a "catch-all provision" stating: "A court may . . . exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States[,]" 735 ILCS 5/2-209(c). (Docs. 12, 13). "[W]hen . . . a plaintiff argues that personal jurisdiction is proper under subsection (c) of the Illinois long-arm statute, the sole issue before the court is whether the nonresident defendant's connection or contact with Illinois is sufficient to satisfy federal and Illinois due process." *Russell v. SNFA*, 2013 IL 113909, ¶ 30.[4]

Illinois courts "will not consider [its] long-arm statute separately from federal due process concerns" when, as here, a defendant declines to argue the Illinois Constitution provides greater due process protections than the United States

---

[4] The Court notes Plaintiff originally alleged personal jurisdiction under § 2-209(a)(1) but seemingly abandoned that argument in its Response (Doc. 13). As the Illinois Supreme Court observed in *Russell*, the amendment adding subsection (c) to the Illinois long-arm statute essentially swallowed the rest of the statute and "collapse[d] the jurisdictional inquiry into the single issue of whether a defendant's Illinois contacts are sufficient to satisfy federal and Illinois due process." *Russell*, 2013 IL 113909, ¶ 30. It is thus unnecessary to prove or even allege the business transaction at issue is of the type contemplated by § 2-209(a)(1). Even so, the Court notes the analyses under §§ 2-209(a)(1) and 2-209(c) will be essentially identical because the facts relevant to the business transaction provision (2-209(a)(1)) will be substantially the same facts relevant to the minimum contacts analysis (2-209(c)), as evidenced by Defendants' analysis under 2-209(a)(1).

Constitution. *See id.* ¶ 33; *see also Hyatt Int'l*, 302 F.3d at 715–16 ("[W]e note that in no case post-*Rollins* [*v. Ellwood*, 141 Ill. 2d 244 (1990),] has an Illinois court found federal due process to allow the exercise of jurisdiction in a case where Illinois limits prohibited it, and conclude that in this particular instance it is enough to evaluate the limits that the Fourteenth Amendment due process places on state exercises of personal jurisdiction."); *GMAC Real Estate, LLC v. E.L. Cutler & Assocs., Inc.*, 472 F. Supp. 2d 960, 964 (N.D. Ill. 2006) ("Although the Illinois Supreme Court contended in *Rollins* that the due process requirements under the Illinois constitution are distinct from the requirements of federal due process . . . the Seventh Circuit has since affirmed that it is only in the rare (and perhaps hypothetical) case that the federal due process analysis might actually differ from the Illinois due process analysis."). Thus, the sole question before the Court is whether the exercise of personal jurisdiction comports with the Fourteenth Amendment's due process guarantees.

A State may exercise personal jurisdiction over an out-of-state defendant consistent with the Fourteenth Amendment if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The instant motion concerns specific jurisdiction as opposed to general jurisdiction. *See generally Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (discussing the differences between specific and general jurisdiction). To exercise specific jurisdiction, the suit itself must arise

7

out of or relate to the defendant's contacts with the forum state. *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). "[T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.' " *Id.* (quoting *Goodyear*, 564 U.S. at 919).

"The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). The defendant must have "purposefully directed" those contacts toward the forum state, meaning they "must arise out of contacts that the 'defendant *himself*' creates with the forum," and the defendant must have purposefully availed himself of the benefits and protections available in the forum state. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original)). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (internal quotation marks omitted).

The existence of a contract with an Illinois resident standing alone is an insufficient contact to hale an out-of-state defendant into an Illinois court. *See Walden*, 571 U.S. at 286. Instead, the Court must consider "(1) who initiated the transaction; (2) where the contract was negotiated; (3) where the contract was formed;

8

and (4) where performance of the contract was to take place." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) (internal quotation marks omitted).

The Seventh Circuit Court of Appeals has long held a crucial factor in considering a challenge to personal jurisdiction in a contract case is whether the defendant initiated the contract. *Telco Leasing, Inc. v. Marshall Cty. Hosp.*, 586 F.2d 49, 52 (7th Cir. 1978). Here, it is unclear from the parties' documentation which party initiated the transaction at issue. Did Tigner "express[] that US Shredder could build [Defendant] EWM a . . . system" after being asked by Defendant Elnicki?[5] (*See* Doc. 12-1 at ¶ 10). Or did Tigner solicit Defendant Elnicki's business uninvited by Defendant Elnicki? In their argument, Defendants[6] assume from Defendant Elnicki's affidavit that Tigner initiated the transaction, but that is not what Defendant Elnicki stated. The Court is unable to discern who initiated the transaction based on the documentation provided by the parties.

Turning to the next two factors for consideration, Defendant Elnicki and Plaintiff's affiliate, US Shredder (also an Illinois corporation), negotiated this agreement over the course of approximately eight months. Though Tigner, the representative of US Shredder with whom Defendant Elnicki negotiated, clearly had an office in Florida, Tigner was not negotiating on his own behalf but rather on behalf

---

[5] In this section, Defendant Elnicki's actions are attributed specifically to Defendant EWM; Defendant Elnicki has affirmed he acted on behalf of Defendant EWM, and Plaintiff's concession rests on the assumption that Defendant Elnicki was acting in his corporate capacity with respect to Defendant EWM and/or Defendant NEQS.
[6] Given that Defendants present their arguments collectively and that Defendant Elnicki was allegedly operating in his corporate capacity, the use of the term "Defendants" in this section refers to all Defendants unless otherwise noted.

of US Shredder. Contacts with Tigner may therefore, at least partially, be attributed to Illinois as negotiations on behalf of an Illinois corporation with its principal place of business in Mackinaw, Illinois. In addition to the mailings, e-mails, and/or phone calls to and/or from Illinois (Plaintiff's and US Shredder's employees), Florida (Tigner and Defendant Elnicki) and Vermont (Defendants EWM and NEQS), in-person meetings were held in Nevada, Vermont, Florida, and New York (Doc. 12-1 at ¶¶ 9-12). The December purchase order confirmations were seemingly sent from the Illinois office, or at least on behalf of Plaintiff's affiliate, who is situated in Illinois, and then returned by e-mail from Defendant Elnicki in Vermont to Plaintiff's affiliate, US Shredder, in Illinois or to Tigner in Florida, a contact attributed to Illinois through Tigner's employment with US Shredder. (Doc. 12-1 at ¶ 17; Doc. 13-1 at Exs. A, B, C; Doc. 13-2). In sum, the negotiations of this contract touched several states, but it is without question Defendant Elnicki's negotiations with US Shredder were principally directed at Illinois in that US Shredder is an Illinois corporation with its principal place of business in Illinois.

Defendants, however, claim surprise at the fact US Shredder and Plaintiff are Illinois corporations, proffering the belief US Shredder was an Alabama company and Tigner worked from Florida. Defendants fail to provide evidence of any "discussion" or "conversation" which could reasonably support Defendant Elnicki's subjective belief US Shredder was based in Alabama. (*See* Doc. 12 at 3; Doc. 12-1 at ¶ 16). The only objective support for this belief the Court can find in the exhibits offered by the parties is a single purchase order proposal, which appeared on company letterhead listing an Alabama address. (Doc. 12-1 at ¶ 15; Doc. 12-1 at Ex. B). However,

Defendants ignore the fact this very document also listed Plaintiff's Illinois address. (Doc. 12-1 at Ex. A). Any belief that US Shredder was based in Alabama and not in Illinois due to the mere fact an Alabama address appeared on this single document is unreasonable. What's more is the same Illinois address appeared on *every document* sent by US Shredder, sometimes alone and sometimes with the Alabama or Florida address, thereby putting Defendants on notice they were dealing with an Illinois corporation or at the very least a company substantially connected to Illinois. Significantly, both the December 8 and December 12 purchase order confirmations listed *solely* the Illinois address. (Doc. 13-1 at ¶¶ 17-20, Exs. A, B, C; Doc. 12-1 at Ex. C). Any claim of surprise at the fact US Shredder was an Illinois corporation is thus willful ignorance, as the objective evidence in the record very clearly indicates a reasonable person in Defendant Elnicki's shoes would be on notice he or she was dealing with a corporation substantially connected to Illinois.

In addition, the objective evidence in the record reasonably indicates performance of the contract was contemplated in Illinois. After the parties agreed to the final specifications in the December 12 purchase order confirmation, Tigner informed Defendant Elnicki that Plaintiff would handle billing, as it was Plaintiff's responsibility to "design, fabricate, assemble, and install" the System (Doc. 13-1 at ¶ 22),[7] all of which would presumably take place at Plaintiff's Illinois facility, given the lack of any objective evidence to the contrary.[8] Thereafter, Plaintiff sent an invoice to

---

[7] Notably, this contradicts Defendants' insistence that US Shredder assigned the contract without their knowledge.
[8] It should be noted delivery of the System was not to occur in Illinois but was instead to occur in Vermont. (Doc. 12-1 at ¶ 18).

11

Defendant EWM, and Defendant NEQS tendered payment in Illinois, which Defendant Elnicki acknowledges in his affidavit. (Doc. 13-1 at Exs. D, E; Doc. 12-1 at ¶¶ 21-25). Notably, the check listed *only* Plaintiff's Illinois address, evincing Defendants' knowledge of Plaintiff's presence and operation in Illinois. (Doc. 13-1 at Ex. D). *See O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176–77 (7th Cir. 1971) (finding negotiations and tendering of payment in the forum state were factors favoring a finding of personal jurisdiction).

Defendants nevertheless argue they believed Plaintiff would perform by manufacturing and installing the system at a North Carolina facility. (Doc. 12 at 3, 8; Doc 12-1 at ¶ 19). Plaintiff explains this is untrue because the activities in North Carolina are unrelated to Plaintiff's obligations under the agreement. Early on in the negotiations, US Shredder facilitated the shipment of the used shredder to CBM, located in North Carolina. (Doc. 13-1 at ¶ 15; Doc. 13-3 at ¶ 5). Separate from the agreement at issue in this case, CBM agreed to repair and/or rebuild the used shredder; Plaintiff, through US Shredder, agreed to design, fabricate, assemble, and install the System, a component or accessory to the shredder being repaired and/or rebuilt by CBM. (Doc. 13-1 at ¶¶ 15-16; Doc. 13-3 at ¶ 7). Neither Plaintiff nor US Shredder operate in the State of North Carolina;[9] additionally, neither are affiliated

---

[9] The Court does note the following sentence in Tigner's letter confirming US Shredder's inspection of the used shredder: "We recently inspected the equipment that is currently at our fabrication facility in North Carolina or en route." (Doc. 12-1 at Ex. A). Though this sentence does appear to indicate Plaintiff had a fabrication facility in North Carolina, both Kenton Graves and Troy Graves affirmed Plaintiff's sole fabrication facility was in Illinois. Factual disputes must be drawn in Plaintiff's favor, so the Court will presume for purposes of this Motion Plaintiff did not have a fabrication facility in North Carolina. (Doc. 13-1 at ¶ 10; Doc 13-3 at ¶ 6).

with CBM. (Doc. 13-1 at ¶ 10; Doc 13-3 at ¶ 6). The Court does note Plaintiff, either through its own agent or an agent of US Shredder, did travel to North Carolina to inspect the shredder, but that seems to be the extent of Plaintiff's activities in North Carolina relating to this case. (Doc. 12-1 at Ex. A).

Given Plaintiff's explanation, it becomes clear there is no evidence supporting Defendants' subjective belief Plaintiff would perform in North Carolina as opposed to its sole fabrication facility in Illinois, and Defendants offer no communications from Plaintiff indicating it would perform in North Carolina or anywhere else, for that matter. What's more is the fact Defendants *knew* neither Plaintiff nor US Shredder were affiliated with CBM, a fact apparent from the North Carolina litigation cited by Plaintiff, so it is unclear how Defendants could have possibly formed the "belief" Plaintiff would perform in North Carolina. The only reasonable and logical inference to be drawn from the evidence is that performance was contemplated in Illinois, which, at any rate, is the inference the Court is bound to make at this stage of the proceedings. *See Purdue Research*, 338 F.3d at 783 n.14.

The significance of Plaintiff's anticipated location of performance is, of course, not Plaintiff's connections to Illinois but, rather, the extent to which the contract with US Shredder, and subsequently Plaintiff, anticipated commercial activity in the State of Illinois at Defendants' direction. From the evidence offered by the parties, the Court finds the vast majority of the contract was to be performed in the State of Illinois, including Defendants' payment and Plaintiff's design and manufacture of the System, which was designed to Defendants' particular specifications. This strongly favors a finding of personal jurisdiction, as "Illinois courts have held that despite the

lack of physical presence within Illinois the long arm statute and due process permit Illinois courts to gain jurisdiction over a person or corporation who enters a contract knowing that it will be performed in Illinois." *Biltmoor Moving & Storage Co. v. Shell Oil Co.*, 606 F.2d 202, 207 (7th Cir. 1979).

Furthermore, the Court notes the choice-of-law provision contained in the terms and conditions of the purchase order proposal and confirmations specified Illinois law. (Doc. 13-1 at ¶¶ 17-20, Exs. A, B, C; Doc. 12-1 at Ex. C). Defendants appear to argue the terms and conditions were added to the purchase order confirmations *after* Defendant Elnicki had signed the agreement and Defendants, therefore, were unaware of them at the time they agreed to the contract. (Doc. 12 at 3-4, 10; Doc 12-1 at ¶ 20). The Court rejects this assertion out of hand. The terms and conditions were attached to each iteration of the purchase order, including each of the copies offered by Defendants as exhibits to their Motion. (Doc. 13-1 at Exs. A, B, C; Doc. 12-1 at Exs. B, C). Moreover, Plaintiff's Systems Project Manager, Christopher Melenick, affirmed the terms and conditions were attached to each iteration of the final purchase order confirmation *prior* to being sent to Defendant EWM for approval. (Doc. 13-2).

Even so, Defendants anticipated a choice-of-law argument and now urge the Court to limit the provision's effect. (Doc. 12 at 10). While it is true a choice-of-law provision standing alone is insufficient to establish personal jurisdiction, it is not insignificant. The Supreme Court has admonished:

> Nothing in our cases, however, suggests that a choice-of-law provision should be ignored in considering whether a defendant has "purposefully invoked the benefits and protections of a State's laws" for jurisdictional

purposes. Although such a provision standing alone would be insufficient to confer jurisdiction, we believe that, when combined with the 20-year interdependent relationship Rudzewicz established with Burger King's Miami headquarters, it reinforced his deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there. As Judge Johnson argued in his dissent below, Rudzewicz "purposefully availed himself of the benefits and protections of Florida's laws" by entering into contracts expressly providing that those laws would govern franchise disputes. *Burger King*, 471 U.S. at 482.

Similarly, Defendants Elnicki and EWM have purposefully availed themselves of the benefits and protections of Illinois laws by entering into an agreement expressly governed by those laws. That factor necessarily weighs in favor of finding personal jurisdiction, particularly when viewed in conjunction with Defendants' other contract-related activities directed at the State of Illinois.

Despite the factors favoring a finding of personal jurisdiction, Defendants continually make much of the fact they have "no customers, offices, property, facilities, employees or agents in the state of Illinois." (Doc. 11 at 1; Doc. 12 at 2, 12). However, the Supreme Court recognized over thirty years ago the lack of physical presence alone is insufficient to avoid personal jurisdiction.

> Jurisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. *Burger King*, 471 U.S. at 476 (emphasis in original).

The trend away from transacting business in person and toward transacting business through the Internet and other electronic means can only be expected to grow as technology advances, as we have seen in the thirty years since *Burger King* was decided. The lack of physical presence in the State of Illinois is thus of little import to the Court's analysis, given Defendants' extensive negotiations with an Illinois corporation to have the System manufactured in the State of Illinois, an agreement subject to the laws of the State of Illinois.

In sum, Defendants fail to rebut Plaintiff's convincing arguments that exercising personal jurisdiction over Defendant EWM would comport with notions of fair play and substantial justice. Though no one factor is dispositive here, the factors decidedly weigh in favor of finding personal jurisdiction. Negotiations and the execution of the contract both relate to Illinois, though the Court is fully aware those factors implicated several other states as well. Critically, the vast majority of performance was contemplated in Illinois, and the contract itself contained a choice-of-law provision choosing Illinois law to govern the agreement. For these reasons, the Court finds sufficient minimum contacts with the State of Illinois to conclude Defendant EWM has purposefully availed itself of the benefits and protections available in Illinois and therefore finds Plaintiff has met its burden of establishing personal jurisdiction over Defendant EWM. Moreover, as explained above, the material facts establishing personal jurisdiction cannot reasonably be disputed, which obviates the need for an evidentiary hearing on the issue of personal jurisdiction as it relates to Defendant EWM. *See Hyatt Int'l*, 302 F.3d at 713.

## II. The Evidence Likewise Supports a *Prima Facie* Case of Personal Jurisdiction Over Defendant NEQS

As previously explained, there need only be a *prima facie* showing of personal jurisdiction at this stage of the proceedings. *See Hyatt Int'l*, 302 F.3d at 713. The Court finds the evidence is sufficient to exercise personal jurisdiction over Defendant NEQS at this time.

Under Illinois law, "[w]here two or more companies enter a joint venture, the minimum contacts of one co-venturer are attributable to other co-venturers such that personal jurisdiction over one means personal jurisdiction over all." *Wendt v. Handler, Thayer & Duggan, LLC*, 613 F. Supp. 2d 1021, 1030 (N.D. Ill. 2009) (internal quotation marks omitted); *see also Khan v. Gramercy Advisors, LLC*, 2016 IL App (4th) 150435, ¶¶ 169-71 (discussing the "joint-venture theory" in the context of personal jurisdiction and rejecting a formulaic, elemental approach in favor of a fact-specific approach); *cf.* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.4 (4th ed. 2008) (explaining an agency relationship may give rise to personal jurisdiction over all parties to the agency relationship). "[A] joint venture is an association of two or more entities to carry out a single, specific purpose for a profit." *Wendt*, 613 F. Supp. 2d at 1030. It "may be inferred from circumstances demonstrating the parties' intent to enter into a joint venture, even in the absence of a formal agreement." *Id.* In the context of personal jurisdiction, the relevant question is whether contacts with the forum state were made unilaterally or bilaterally, that is to say, whether the contacts were made on behalf of just one venturer or both. *Khan*, 2016 IL App (4th) 150435, ¶ 171.

The Court is unwilling to assume without some support in the record that Defendant Elnicki was unaware of his contradictory statements as to the ownership of the shredder, and will accept the statements at face value that both Defendants EWM and NEQS have some interest, either ownership or proprietary, in the shredder. However, even assuming Defendant EWM had no ownership interest in the shredder and its sole purpose was to "acquire and operate" the System, as Defendant Elnicki affirmed (Doc. 16-1), *both* Defendants EWM and NEQS had a significant interest in the transaction at issue. The System could not operate without being attached to the shredder purportedly owned by Defendant NEQS. Moreover, Defendant NEQS would be benefitted by the acquisition and operation of a component to its shredder, which, presumably, would increase the profitability of its operation.

In addition to Defendants' irrevocably intertwined interests in the System and the shredder, the Court is concerned with other facts, such as: (1) Defendant NEQS has held itself out as "Earth Waste & Metal," as evidenced by its check; (2) Defendant NEQS controlled Defendant EWM's purse strings to the extent that Defendant EWM did not have a bank account of its own and instead operated out of Defendant NEQS's account, evincing a comingling of finances and/or assets; and (3) Defendant Elnicki is president of *both* corporations and was the *only* person acting on behalf of Defendants throughout the transaction at issue. These facts present a fairly convincing case against Defendants' representation that Defendants EWM and NEQS are truly separate entities.

Regardless, the Court finds sufficient evidence in the record at this stage of the proceedings to conclude Defendants EWM and NEQS were, at the very least, joint venturers in the transaction at issue. Defendant Elnicki, president of both Defendants EWM and NEQS, entered into an agreement "to carry out a single, specific purpose" that would directly benefit *both* Defendants EWM and NEQS. This creates the reasonable inference that Defendant EWM's contacts with the State of Illinois through Defendant Elnicki were bilateral as opposed to unilateral. Consequently, Defendant EWM's contacts with the State of Illinois are attributable to its co-venturer, Defendant NEQS, and Defendant NEQS therefore cannot slip the net of personal jurisdiction in this Court.

## CONCLUSION

For the foregoing reasons, Plaintiff's claim against Defendant Elnicki is voluntarily DISMISSED WITHOUT PREJUDICE and Defendant Elnicki is therefore TERMINATED from this case. As to the corporate Defendants, Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 11), which challenges this Court's personal jurisdiction, is DENIED.

SO ORDERED.

Entered this 15th day of January 2019.

/s Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge